[Civ. No. 49190. Second Dist., Div. Three. Oct. 26, 1976.]

ETHEL LEE BONNER, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES
COUNTY, Respondent;
JAMES BONNER, Real Party in Interest.

## COUNSEL

Saul J. Bernard for Petitioner.

No appearance for Respondent.

Kenneth R. Thomas for Real Party in Interest.

## OPINION

**POTTER, J.**—Petitioner, Ethel Lee Bonner, seeks a peremptory writ of mandate to require respondent superior court to vacate its order denying petitioner's claim of an exemption from execution for real property upon which a declaration of homestead was filed December 15, 1967. At the time the declaration was filed, the property (title to which was in joint tenancy) was the community property of petitioner and real party in interest James Bonner, who were then husband and wife, and the declaration was filed jointly by them. On April 18, 1973,[1] respondent

---

[1]Pursuant to rule 12(a), California Rules of Court, this court has caused the superior court file to be transmitted to this court and made a part of the record of this appeal.

That file shows that the property issues were tried May 27, 1970, and a minute order of that date was made disposing of the property issues. However, no formal interlocutory judgment was signed or entered on the basis of that order, and on August 8, 1972, petitioner made a motion to reopen the submission. This motion was denied October 4, 1972. Counsel for real party was ordered to prepare a judgment in accordance with the provisions of the original order. Petitioner appealed from the judgment and the denial of her motion to reopen. Another division of this court modified the judgment in a manner not relevant to this appeal and affirmed the judgment as modified.

court rendered its interlocutory judgment of dissolution of marriage which adjudged that the property which was the subject of the homestead declaration was the community property of the parties and had a reasonable value of $10,500 over and above any encumbrance. The property was awarded to petitioner as her sole and separate property. Real party was awarded a business property with a reasonable value of $500 and to equalize the division of community property, the court ordered as follows: "Petitioner is ordered to pay to [real party] $5,000.00 as and for his community interest in the said real property. Said sum is to be paid upon petitioner's remarriage or upon the petitioner's sale of the aforesaid real property or, in any event, to be paid to [real party] three (3) years from May 27, 1970."[2]

On January 14, 1976, no payment having been made by petitioner of any part of the $5,000 awarded to real party, real party applied for a writ of execution. The application was made on a court form provided for use in domestic relations matters. Real party declared under penalty of perjury that the judgment contained a provision as follows: "Petitioner is ordered to pay the respondent $5,000.00 as and for his community interest therein. Said sum to be paid upon the petitioner's remarriage or upon the petitioner's sale of the aforesaid realty, or in any event to be paid to the respondent within three (3) years from May 27, 1970,"[3] and that the balance due was $5,000 with accrued interest of $845.85. The application contained no reference to the homesteaded property. It resulted in an order for the issuance of a writ of execution which read as follows:

"Upon reading the application of **James Bonner** and good cause appearing therefor, it is ordered that a writ of execution issue in the sum of

$ *5,000.00* principal; $ ———— costs; $ ———— attorney fees, and

$ *845.85* *Accrued* interest, in favor of *JAMES BONNER*.

to the County of *Los Angeles*."

---

[2]May 27, 1970, was the date of the original minute order dividing the community property. (See fn. 1.) That order provided that real party was to be paid his $5,000 share "in any event . . . within three (3) years from this date."

[3]This was a misquotation of the judgment which, after describing the homesteaded property, made specific reference to real party's "interest in the said real property." The first sentence is taken verbatim from the May 27, 1970, minute order. The second sentence is a modification of the language of the order, substituting "from May 27, 1970" in lieu of "from this date."

Pursuant to this order, a writ of execution was issued January 14, 1976, by the clerk of the court. On March 15, 1976, the writ was levied upon the homesteaded real property which was awarded to petitioner.

Petitioner timely filed a notice of exemption pursuant to Code of Civil Procedure section 690.50, basing said claim upon Code of Civil Procedure section 690.235 and the provisions of title 5, part 4 of division 2 of the Civil Code (§§ 1227-1304). Petitioner's claim recited that the declaration of homestead was filed December 15, 1967, that it "has never been abandoned," that petitioner "has never declared and does not have another homestead on any real property in the State of California," and that "the fair market value of said real property does not exceed $15,000." Real party filed a counteraffidavit stating that petitioner "does not now reside nor has she for the last past few years resided at said residence," that "the value of the property less all encumbrances exceeds any possible exemption amount applicable," that by the judgment of dissolution "said property was divided equally between the parties," by awarding petitioner legal title and by awarding real party $5,000 which "constitutes an ownership interest in the property and any purported homestead that may have been recorded," and that following the dissolution no declaration of homestead was filed by petitioner.

A hearing was held on the claim of exemption June 22, 1976. Petitioner's claim was denied. The only statement of reasons given was, "The Court finds that under the circumstances of this case, there is no exemption."

On July 30, 1976, petitioner filed her petition in this court, and on August 11, 1976, we issued our alternative writ and order to show cause and a stay of proceedings with respect to the writ of execution.

*Contentions*

Petitioner contends:

1. That the homestead rights created by the 1967 declaration were not terminated by the dissolution of the marriage of the parties, nor by her nonresidence in the homestead property, and

2. That real party "is merely a 'creditor' of the Petitioner and is not entitled to any special preference by law."

Real party contends:

1. That the declaration of homestead was destroyed by the interlocutory decree awarding the property to petitioner without mentioning the homestead rights,[4] and

2. The court properly exercised its authority under the Family Law Act to implement its equal division of the community property by providing for execution sale of the homesteaded parcel.

### Issues

Two issues are presented by this proceeding. They are:

1. Did the dissolution of the marriage of the parties and award of the homesteaded property to petitioner, without mention of the homestead rights, destroy such rights?

2. If petitioner's homestead rights were not destroyed by the decree, did the order for the issuance of the writ of execution validly subject the homesteaded property to forced sale?

### Discussion

We resolve the first issue in favor of petitioner; we conclude that her homestead rights in the property have not been destroyed by the decree awarding the property to her as her separate property without mentioning the declaration of homestead.

On the second issue, we conclude (1) that under the Family Law Act the court in dissolution proceedings had authority to make an order for sale of the homesteaded property for the purpose of implementing its judgment equally dividing the community property, but (2) that the order for issuance of the writ of execution did not constitute such an order for sale of the homesteaded property and, therefore, (3) that the claim of exemption should have been sustained.

---

[4]Real party does not take issue with petitioner's contention that her nonresidence has no effect upon the continued validity of the homestead; consequently, there is no need to discuss this issue. It seems, in any event, to have been resolved favorably to petitioner's contention. (See *California Bank* v. *Schlesinger,* 159 Cal.App.2d Supp. 854, 861 [324 P.2d 119].)

■ *Petitioner's Homestead Rights Were Not Destroyed by the Interlocutory Decree*

There has long been great confusion in the law respecting the effect of dissolution of the family upon homestead rights. In *City Store* v. *Cofer,* 111 Cal. 482 [44 P. 168], a declaration of homestead upon the separate property of a married woman was made for the joint benefit of herself and her husband. Thereafter, she obtained a decree of divorce from the husband. No mention of the property was made in the pleadings or in the decree. An execution upon a judgment obtained prior to the divorce decree was held invalid. The court said (111 Cal. at pp. 483-484): "Plaintiff's judgment was one which could not be enforced by a seizure and sale of the homestead property, and, consequently, no title was vested in the purchaser at such sale. Section 1265 of the Civil Code provides: 'From and after the time the declaration is filed for record, the premises therein described constitute a homestead. . . . But in no case shall it be held liable for the debts of the owner, only except as provided in this title.' The judgment held by plaintiff was not one of the debts provided for by that title of the code, and necessarily the homestead was entirely exempt from its effect and operation. The case, in principle, appears to be similar to *Roth* v. *Insley,* 86 Cal. 134 [24 P. 853], where this court said: 'Under the plain language of the statute just quoted it would appear that, when the homestead was once declared, it remained as such, always exempt from forced sale as against any liability of the owner, only except as provided in the provisions of the title of which it was a part. And, as the debt here was not one for which under that title the property was liable, it must follow that the attempt to sell the property was forbidden by law, and a sale could vest no title in the purchaser.' "

Conflict and confusion were injected by subsequent cases characterized in the opinion in *California Bank* v. *Schlesinger, supra,* at pp. 859-860 [324 P.2d 119], as follows: "Claimants rest their case upon the general statement made as dicta in some cases and merely recited in others, usually in relation to title, that divorce terminates the homestead exemption rights because it terminates the family relationship. (*Remley* v. *Remley* (1920), 49 Cal.App. 489, 490 [193 P. 604]; *Lang* v. *Lang, supra* (1920), 182 Cal. 765 [190 P. 181]; passim, *Walton* v. *Walton, supra* (1943), 59 Cal.App.2d 26, 29 [138 P.2d 54].) The incongruity of such dicta with Civil Code, sections 146 and 1265, has not gone unnoticed by the profession. (Consult: 26 Cal.L.Rev. 475 (1938); Healey, *Disposition of Homestead on Divorce and Death* (1954), 29 Los Angeles Bar Assn. Bulletin 131, 151.)"

In *Schlesinger,* the court upheld the validity of a wife's homestead rights in joint tenancy property which had been quitclaimed by the husband after a divorce in which no disposition was made of the property. The court characterized all of the general statements that divorce terminates the homestead as dicta and irreconcilable with the Supreme Court decision in *City Store.* We find the court's extended treatment of the matter in *Schlesinger* persuasive and consider it necessary to add only that *Lang* v. *Lang,* 182 Cal. 765 [190 P. 181], the only Supreme Court case stating the "no family no homestead" proposition, is, in any event, distinguishable. In that case the homesteaded property was not dealt with at all in the divorce proceedings. In the case at bench, the court awarded the homesteaded property to petitioner.

The failure of the interlocutory judgment of dissolution to mention the homestead rights does not indicate an intent to terminate the benefits afforded under the Homestead. Law. We are obliged to give a liberal interpretation to that law. (*Estate of Kachigian,* 20 Cal.2d 787, 791 [128 P.2d 865]; *Parker* v. *Riddell,* 41 Cal.App.2d 908, 914 [108 P.2d 88].)

Civil Code section 1265 provides that, "From and after the time the declaration is filed for record, the premises therein described constitute a homestead." Sections 1243 and 1244 of the Civil Code provide that except in cases of incompetence, a homestead can be abandoned *only* by a declaration of abandonment recorded in the office in which the homestead was recorded. To destroy homestead rights on the basis of the parties' inadvertent failure to provide for continuation of them in a dissolution in which one of the parties was awarded the property upon which the homestead was declared would violate the policy of the Homestead Law that once created, homestead rights should continue until abandoned.

We, therefore, conclude that petitioner's homestead rights were not destroyed by the dissolution of the marriage between petitioner and real party.

■ *Respondent Court Had Power to Order a Forced Sale of the Homesteaded Property to Effectuate an Equal Division of the Community Property*

Since the date of its enactment, the Family Law Act has authorized the court in dissolution matters to order partition or sale of community

property upon which a homestead has been declared in order to implement an equal division of the community property. As originally enacted, the act contained Civil Code section 4808, subdivision (d), which particularly described this power.[5] Civil Code section 4800, as originally enacted, mandated equal division of the community property· but made no express reference to homesteaded community property. This gave rise to confusion as to whether the community property subject to equal division was that exclusive of the homesteaded property. That confusion was resolved in *In re Marriage of Paddock,* 18 Cal.App.3d 355 [95 Cal.Rptr. 652], which held that under the original language of the act, community property subject to equal division included homesteaded property.

The Family Law Act became effective January 1, 1970. In September 1970, section 4808 was repealed and, simultaneously, section 4800 was amended to insert an express reference in the first paragraph to community property "from which a homestead has been selected" as included in the community property required to be equally divided. The amendment to section 4800 also included the addition of a subdivision (d) thereto, as follows: "The court may make such orders as it deems necessary to carry out the purposes of this section." The Family Law Symposium of the Los Angeles Superior Court (1974) describes the effect of these simultaneous revisions as follows (p. 32): "Has the court power, over objection, at a pendente lite hearing to order that the family home be sold and the proceeds impounded in a blocked savings account? It was well settled that in disposing of *community* property by interlocutory judgment, the court may order partition or sale. See former Civ. Code 146, last par.; *Desanto* v. *DeSanto* (1958) 162 Cal.App.2d 126, 129 (4); cf. *Johnson v Johnson* (1963) 214 Cal.App.2d 29, 34-35 (power to sell applies only to community property; held, error to require sale of home which husband had deeded to wife and was therefore her separate property). The language of former section 146 was carried into the Family Law Act in section 4808(d) and limited to homesteads. However, when [section] 4808 was repealed (Cal. Stats. 1970 ch. 962), an equivalent provision was added to section 4800 as subdivision (d): 'The court may make such orders as it deems necessary to carry out the purpose of this section.' See Attorney's Guide to Family Law Act Practice 66A (C.E.B. 1970)."

---

[5]Civil Code section 4808 read in pertinent part:

"In any judgment decreeing the dissolution of the marriage or the legal separation of the parties, the court shall assign the homestead as follows:

" . . . . . . . . . . . . . . . . . .

"(d) Whenever necessary to carry out the purpose of this section, the court may order a partition or sale of the property and a division or other disposition of the proceeds."

To the extent that there is an apparent conflict between the provisions of section 4800 of the Civil Code and the provisions of sections 1240 and 1241 of the Civil Code, relating to forced sale of homesteaded property, it is apparent that the former must control. Sections 1240 and 1241 generally exempt homesteaded property from forced sale except as provided in section 1241.[6] None of the exceptions stated in section 1241 apply to a judgment rendered subsequent to the recordation of the declaration of homestead which orders a sale of the property in order to divide it. It is apparent, however, that Civil Code section 4800 is more specific than Civil Code section 1240, because the former deals expressly with homesteads in the context of dissolution proceedings, whereas the latter deals with homesteads in relation to judgments in general.

The court's power to direct a sale of the homesteaded community property was not, moreover, exhausted by its disposition of the matter in the interlocutory judgment. That decree clearly indicated the court's intent that real party receive $5,000 "as and for his community interest in the said real property." Real party was not thereby converted to a mere creditor. Failure of petitioner to sell the property within three years as the judgment contemplated, or otherwise arrange for real party to receive his share, justified the court in making a further order to prevent frustration of the intended division. If no such further order were made and the property remained in petitioner's hands exempt from execution, the net result would be to award virtually all the community property to petitioner.

To the extent that a judgment of dissolution is not self-executing in respect of any division of property therein ordered, the court retains jurisdiction to make such further orders as are appropriate to compel obedience to its judgment. In *Brown* v. *Brown,* 22 Cal.App.3d 82, 83 [99

---

[6]Civil Code section 1240 reads as follows: "The homestead is exempt from execution or forced sale, except as in this title provided."

Civil Code section 1241 reads as follows:

"The homestead is subject to execution or forced sale in satisfaction of judgments obtained:

"1. Before the declaration of homestead is recorded, and which, at the time of such recordation, constitute liens upon the premises.

"2. On debts secured by mechanics, contractors, subcontractors, artisans, architects, builders, laborers of every class, materialmen's or vendors' liens upon the premises.

"3. On debts secured by encumbrances on the premises executed and acknowledged by husband and wife, by a claimant of a married person's separate homestead, or by an unmarried claimant.

"4. On debts secured by encumbrances on the premises, executed and recorded before the declaration of homestead was filed for record."

Cal.Rptr. 311], a judgment of divorce ordered that certain stock "shall be divided equally." Thereafter, the wife sold 475 shares of the stock and remitted only a portion of one-half of the proceeds to which her husband was entitled. On application of the husband, the court made an order that the wife pay the husband the unpaid portion of his half. Affirming the order, the court said:

"Beverly has appealed the April order, contending the trial court was without jurisdiction to make the order. She argues that the original judgment contained no provision for enforcement of the order directing division of the New Horizons stock, and therefore the April order either modified the original judgment or amounted to a new judgment. Since the original judgment had become final it could not be modified; and since a new trial had not been granted a new judgment could not be entered.

"We do not accept Beverly's interpretation of the trial court's original judgment. The judgment of the trial court did not merely state the respective rights of the parties but it mandated an affirmative division of the stock. In its April order the trial court did not modify its judgment or create a new judgment, but it merely implemented the existing order to divide the stock.

"Every court has power to compel obedience to its judgments and orders (Code Civ. Proc., §§ 128, subd. 4, 177), and a court of equity retains inherent jurisdiction to oversee and enforce execution of its decrees. (Witkin, Cal. Procedure. (2d ed. 1970) Judgments, § 79, p. 3240; see, e.g. *Lesser & Son* v. *Seymour,* 35 Cal.2d 494, 500 [218 P.2d 536]; *Green Trees Enterprises* v. *Palm Springs Alpine Estates,* 66 Cal.2d 782, 788 [59 Cal.Rptr. 141, 427 P.2d 805]; *Vallelunga* v. *Gomes,* 102 Cal.App.2d 374, 382 [227 P.2d 550].)" (22 Cal.App.3d at pp. 83-84.)

In *Severdia* v. *Alaimo,* 41 Cal.App.3d 881 [116 Cal.Rptr. 405], a post-judgment order requiring an attorney who had represented the wife to deliver to her the proceeds from the sale of community property as to which he claimed a lien was affirmed. The court said (41 Cal.App.3d at p. 889): "In the instant case the trial court did not purport to make a new and different judgment but to enforce a judgment previously made. Section 4380 of the Civil Code provides that 'Any judgment, order, or decree of the court made or entered pursuant to this part may be enforced by the court by execution, attachment, the appointment of a

receiver, contempt, *or by such other order or orders as the court in its discretion may from time to time deem necessary.'* (Italics added.)" (See also *Day* v. *Sharp,* 50 Cal.App.3d 904, 912 [123 Cal.Rptr. 918].)

■ It, therefore, appears that the court retained power to order a sale of the homesteaded community property awarded to the petitioner in order to carry out its equal division of the community assets. The issue remains, however, as to whether that power has been exercised in this case.

■ *The Court Has Not Effectively Ordered Sale of the Homesteaded Community Property*

The court in this case made an order for the issuance of the writ of execution. Such an order was needed because in a dissolution case a writ of execution is not issued as a matter of course and requires a court order. (*Messenger* v. *Messenger,* 46 Cal.2d 619, 630 [297 P.2d 988]; *Jackson* v. *Jackson,* 51 Cal.App.3d 363, 368 [124 Cal.Rptr. 101].) However, the granting of the order for the issuance of a writ of execution did not constitute an exercise of the court's discretion under Civil Code section 4800 to order sale of the homesteaded community property. The order was made on the basis of a showing which made no reference whatever to the homesteaded property. It was simply a routine application for a normal writ of execution which ordinarily may be levied only upon nonexempt property.

Civil Code section 4800 only supersedes the provisions of Civil Code sections 1240 and 1241 because it is more specific. Such supersession should, therefore, occur only when specific application has been made to a dissolution court referring to homesteaded community property and demonstrating the necessity for an order directing its sale in order to effectuate an equal division.

We conclude, therefore, that the order for issuance of the writ of execution was not an exercise of the court's authority under Civil Code section 4800, and that the general writ of execution which was issued is not effective as against petitioner's claim of exemption. We do not intend thereby to hold that the court could not, in any event, authorize the issuance of a writ of execution to be effective as against such homesteaded community property. We note in this connection, however, that under most circumstances, a sheriff's or marshal's sale at public auction is not

the most effective way to realize the value of community real property which must be sold in order to make a division of proceeds. Traditionally, courts in dissolution proceedings have provided for sale at or above an appraised value by requiring the parties to sign listings and escrow instructions appropriate to a normal sale in the ordinary course of business.

Inasmuch as the writ of execution was issued without consideration of the effect of a levy upon the homesteaded community property, we hold that the writ was not effective as against petitioner's claim of homestead exemption. However, by so holding we do not intend to negate the power of the court upon a proper showing to make an order directing sale of the homesteaded community property and a division of the proceeds.

### Disposition

The alternative writ is discharged; let a peremptory writ of mandate issue directing respondent court to vacate its order denying petitioner's claim of exemption and to enter a new and different order granting such claim.

Ford, P. J., and Allport, J., concurred.