[No. A043991. First Dist., Div. Four. Dec. 28, 1989.]

In re the Marriage of SHIRLEY and LYLE L. FARNER.
SHIRLEY FARNER, Respondent, v.
LYLE L. FARNER, Appellant.

COUNSEL

Jack B. Burstein and Smith & Burstein for Appellant.

Carl J. Debevec and Debevec, Usnick & Long for Respondent.

OPINION

ANDERSON, P. J.—Appellant Lyle L. Farner challenges the trial court's denial of his motion to quash a writ of execution which the clerk of the

court issued based on a previous order awarding respondent Shirley Farner 43.75 percent of his military retirement pay retroactive to the couple's date of separation. Specifically, Mr. Farner complains that the order establishing Mrs. Farner's interest in his retirement pay is not a money judgment and, thus, is not subject to enforcement by writ of execution. We conclude the order, properly construed, fits within the statutory definition of a money judgment. However, the clerk did not have authority to issue the writ in this instance because (1) the clerk could not, from the form of the order or the record before it, determine the exact amount owing to Mrs. Farner; and (2) in any event with respect to enforcement of family law orders, it is within the discretion of the court, and not a ministerial function of the clerk, to order execution. (Civ. Code,[1] § 4380.) Accordingly, we reverse with directions to the trial court to exercise its discretion pursuant to section 4380.

## I.

Mr. Farner has already appealed, unsuccessfully, on the issue of the trial court's power to grant his former wife a share of his retirement pay. In his first appeal Mr. Farner did not attack the retroactive effect of the trial court order. After our affirmance, Mrs. Farner applied for a writ of execution for the retroactive benefits in the amount of $36,023.53 from May 2, 1979 (date of separation), through April 1987 when she began receiving her portion directly from the United States Department of the Air Force (Air Force). Accompanying the application were (1) an affidavit regarding interest pursuant to Code of Civil Procedure section 685.050 reciting accrual of $5,443.53 in interest; (2) a letter from the Air Force Accounting and Finance Center setting forth the amount of Mr. Farner's gross monthly retirement pay from May 1979 through April 1987; and (3) a summary of the computations used to calculate Mrs. Farner's interest. The clerk of the court issued the writ on May 5, and Mr. Farner then moved to quash.[2]

At the hearing on the motion to quash, counsel for Mrs. Farner showed the court the calculations upon which he based her interest. The court gave Mr. Farner five days to respond. Rather than addressing the propriety of the Air Force figures, Mrs. Farner's calculations, or the amount of interest, counsel for Mr. Farner focused solely on jurisdictional and procedural issues concerning the application for writ and the character of the underlying order, i.e., whether it was a money judgment subject to writ of

---

[1] All statutory references are to the Civil Code unless otherwise indicated.

[2] Subsequently, Mr. Farner also moved ex parte to "discharge" the writ of execution, raising essentially the same points as his motion to quash. The court granted "the motion to recall," but only so that the judge hearing the underlying motion to quash could "decide the whole thing." We treat this order for what it is—a temporary recall of the writ of execution pending final ruling on the original motion.

execution. Earlier, he had also argued that if the order were a money judgment, the court should deny retroactive enforcement for equitable reasons.

Upon consideration of the briefs and papers submitted, the court denied Mr. Farner's motion to quash, ruling as follows: "The Court's order of July 14, 1986 grants petitioner a clearly ascertainable money judgment. A plain reading of the court order establishes that respondent is to pay petitioner 43.75% of his military retirement retroactive to the date of separation in May of 1979 for a total of $36,624.40." The court went on to explain that it obtained the principal figure ($30,418.91) "from the Court record as set forth in the Air Force Finance and Accounting Center's statement," and calculated interest ($6,205.49) at the rate of 10 percent per annum for the period covering July 14, 1986, through August 1, 1988. Mr. Farner now appeals from this order.

## II.

Mr. Farner insists the trial court should have granted his motion to quash because (1) the July order effects a division of property, is not a money judgment and, therefore, did not render him a judgment debtor of Mrs. Farner and (2) the Air Force letter was not part of the record and could not operate to boost the judgment into the money judgment category. He also complains that Mrs. Farner should have first sought an accounting and that, by summarily proceeding by way of writ, she deprived him of his rights to invoke equitable defenses and to seek partial or total disallowance of interest.

We conclude that the aspect of the judgment affording Mrs. Farner a retroactive right to a portion of Mr. Farner's retirement pay in substance is a money judgment. However, the Air Force letter was not yet part of the record and, thus, the clerk could not ministerially act without court review to order execution. Further, under the Family Law Act,[3] issuance of a writ in a matter such as this is within the discretion of the trial court. (§ 4380.) Because the court did not exercise its discretion under section 4380, when it denied the motion to quash, we reverse and remand for further proceedings.

### A. *The July 14, 1986, Order*

The pivotal document in this case is the July 14, 1986, order which reads as follows: "IT IS THEREFORE ORDERED, that petitioner [Mrs. Farner] shall receive as community property, 43.75 percent of respondent's [Mr.

---

[3] Section 4000 et seq.

Farner] retired military pay, and that this order is effective retroactive to the date of separation." The July 14 order accomplished two things: (1) it established and awarded to Mrs. Farner her proportionate community property interest in Mr. Farner's military pension and (2) it awarded to Mrs. Farner a percentage of the benefits already paid to Mr. Farner. Thus Mrs. Farner has a present, existing ownership interest in payments *as they accrue,* and she also has a right to 43.75 percent of all undivided payments received by Mr. Farner since the date of separation.

■ Technically, a spouse with a community property interest in the other's retirement pay "claims not as a creditor, but as an owner with a 'present, existing and equal interest.'" (*Phillipson* v. *Board of Administration* (1970) 3 Cal.3d 32, 44 [89 Cal.Rptr. 61, 473 P.2d 765] [overruled on other grounds in *In re Marriage of Brown* (1976) 15 Cal.3d 838, 851, fn. 14 (126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164)]; *In re Marriage of Fithian* (1977) 74 Cal.App.3d 397, 403 [141 Cal.Rptr. 506].) And, theoretically, this analysis could apply as well to undivided payments which the retiree has received without paying over the other spouses's rightful share. Under similar circumstances the retiree has been cast as an involuntary trustee of the funds for the benefit of the co-owner spouse, subject to remedies against unfaithful trustees. (74 Cal.App.3d at pp. 405-406; *Verner* v. *Verner* (1978) 77 Cal.App.3d 718, 729 [143 Cal.Rptr. 826].)

In our view the nonretiree spouse's status as co-owner, not creditor, makes sense with respect to current and future payments forthcoming from the military, but once the retiree has received and converted to his or her exclusive use undivided benefits in which the other spouse has a community property interest, these definitions become fictions. While an interest in the retiree's retirement pay is a property interest, payments already received are nothing more than money in the hands of the retiree. In a practical sense the situation is no different than where the court awards one spouse a valuable asset and then orders that spouse to pay the other a certain sum as and for his or her community property interest therein. We conclude these labels cannot be called upon to defeat the nonretiree spouse's undisputed right to his or her share of this community property asset. Unquestionably the trial court has authority in a dissolution proceeding to effect the division of property by ordering the retiree to pay over the other's pro rata share of undivided benefits already received. (§ 4800.) Such an order would be a money judgment as defined in the Code of Civil Procedure section 680.270: "'Money judgment' means that part of a judgment that requires the payment of money."

■ The question now becomes whether the July 14 order fits this definition. ■ In ascertaining the meaning of a judgment, we look to the

same general rules that govern our efforts to detect the meaning of any other writing. (*Lesh* v. *Lesh* (1970) 8 Cal.App.3d 883, 890 [87 Cal.Rptr. 632].) Thus, we construe the judgment as a whole to give effect to its obvious intention (*Lazar* v. *Superior Court* (1940) 16 Cal.2d 617, 622 [107 P.2d 249]), and in the process we can resort to the entire record supporting the judgment (*Tronslin* v. *City of Sonora* (1956) 144 Cal.App.2d 735, 738 [301 P.2d 891]). Further, in construing the effect of a judgment we apply the familiar maxim that the law respects the form of words less than their substance. (§ 3528; *Schisler* v. *Mitchell* (1959) 174 Cal.App.2d 27, 29 [344 P.2d 61].)

■ With these principles in mind, we note that the July 14 order stated Mr. Farner retired from active military service in 1974 and there was evidence forthcoming from the record that since separation, Mr. Farner had been receiving monthly payments in excess of $500.[4] It is thus apparent that the retroactive language in the July order addressed the very specific fact that Mr. Farner had been receiving payments on a monthly basis since the couple's separation. Looking to the substance of the judgment as we must, it is further evident that the court and the parties intended the July 14 order to settle Mrs. Farner's right to her pro rata share of those payments which had redounded solely to Mr. Farner's benefit. This being the intention of the judgment, we have no difficulty interpreting the court's direction that Mrs. Farner "shall receive" 43.75 percent of Mr. Farner's retirement pay retroactive to the date of separation as an order directing him to pay her 43.75 percent of all such unallocated payments. So construed, we resolve that the aspect of the July 14 order corresponding to retroactive benefits is, in substance, a money judgment.

### B. *Writ of Execution*

The next question becomes whether the writ properly issued in this case. ■ In ordinary civil actions, after entry of a money judgment and upon application, the law entitles a judgment creditor to issuance of a writ of execution by the clerk of the court. (Code Civ. Proc., § 699.510.) The clerk acts in a ministerial capacity and has no discretion to refuse issuance of the writ when confronted with an unconditional judgment, in ordinary form. (*Adams* v. *Bell* (1933) 219 Cal. 503, 505 [27 P.2d 757].) But where the judgment is conditional and, thus, a judicial question arises as to the judgment creditor's right, the better practice is to bring the operative facts to the

---

[4] For example, Mrs. Farner's pretrial statement, filed June 15, 1981, identified Mr. Farner's military retirement as a community asset and, based on an approximate net figure of $537 per month, calculated that for the 26-month period since separation, he had received $13,961. In that statement Mrs. Farner asked the court to order Mr. Farner to pay her $6,073.47 (43.5 percent of $13,961).

court's attention and move for an order directing issuance of the writ. (*Ibid.*) ▮ In this case the order was not "in ordinary form" and raised a judicial question because the clerk could not, with any certainty, ascertain the amount to be paid either from the order itself or the record as it existed upon entry of the order. The order potentially was a candidate for enforcement by execution, but only after review and hearing in the trial court.

Further, regardless of the form of the order, judicial intervention was required here. Where the creditor seeks a writ of execution to enforce a family law judgment, he or she must, in addition to meeting the requirements of Code of Civil Procedure section 699.510 et seq., "satisfy the requirements of any applicable provisions of Sections 4380 to 4384, inclusive, of the Civil Code." (Civ. Code Proc., § 699.510, subd. (b).) In most family law matters execution requires court approval pursuant to section 4380, which provides: "Any judgment, order, or decree of the court made or entered pursuant to this part[5] may be enforced by the court by execution, the appointment of a receiver, contempt, or by such other order or orders as the court in its discretion may from time to time deem necessary."[6] As our Supreme Court explained when interpreting former section 139, pertinent parts of which the Legislature incorporated into section 4380: "Under this provision the trial court now has discretion to determine in each case whether execution is an appropriate remedy for enforcing its order." *Messenger* v. *Messenger* (1956) 46 Cal.2d 619, 630 [297 P.2d 988]; see also *Bonner* v. *Superior Court* (1976) 63 Cal.App.3d 156, 167 [133 Cal.Rptr. 592].)

The denial of Mr. Farner's motion to quash did not constitute an affirmative exercise of the court's discretion under section 4380. The court rendered its decision solely on the basis of its interpretation of the character and content of the July 14 order without inquiring into the advisability of execution.

We conclude the correct and equitable disposition in this case is to reverse the order denying the motion to quash and remand the cause for further proceedings. On remand we direct the trial court to exercise its discretion under section 4380 to enter such further orders as are appropriate to effect compliance with its July 14, 1986, order. As a further point of guidance we note that as to each unallocated payment which Mr. Farner received after July 14, 1986, any interest thereon would accrue from the date Mr. Farner received the payment rather than the earlier date of the

[5] The phrase "this part" refers to the Family Law Act, found at part 5 of division 4 of the Civil Code.

[6] Under certain circumstances a party can obtain execution to enforce child or spousal support orders without court approval. (§ 4383.)

order. (See Code Civ. Proc., § 685.020.) Finally, we reject Mr. Farner's implicit argument that the court can never order execution in this case because it could not, on July 14, 1986, ascertain with certainty the amount allegedly owing to Mrs. Farner. (See *Foust* v. *Foust* (1956) 47 Cal.2d 121, 124 [302 P.2d 11].) ■ The trial court has broad power under section 4380 to oversee and enforce its decrees; certainly, this power includes the power to consider matters outside the original record as necessary to enable the court to exercise its discretion.

We reverse the judgment and remand the cause for further proceedings consistent herewith. Costs on appeal are awarded to appellant.

Poché, J., and Perley, J., concurred.