Filed 8/6/14  Marriage of Rafipoor CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of MAHNAZ and MIKE RAFIPOOR. | |
| MAHNAZ HARRIS-RAFIPOOR, Respondent, v. MIKE RAFIPOOR, Appellant. | G048924 (Super. Ct. No. 03D006006) O P I N I O N |

Appeal from postjudgment orders of the Superior Court of Orange County, David L. Belz, Judge.  Appeal dismissed.  Appeal treated as petition for an extraordinary writ.  Petition denied.

Law Offices of Lemkin, Barnes & Row and Wm. Curtis Barnes, Jr., for Appellant.

Law Office of Ronald Glenn Gomez and Ronald Glenn Gomez for Respondent.

*     *     *

Mike Rafipoor (husband) appeals from an order that denied his motion to strike an order to appear for a judgment debtor examination and declared a paragraph in the parties' marital settlement agreement (MSA), stating, "Husband's debt owed to Wife $400,000," constituted a money judgment. Husband contends the trial court erred in its interpretation of the MSA and in refusing to admit parol evidence on the issue. We conclude the order is not an appealable ruling and dismiss the appeal. However, we reach the merits by construing the appeal as a petition for an extraordinary writ. On the merits, we deny the petition.

## FACTS AND PROCEDURAL BACKGROUND

In December 2003, the trial court entered a judgment dissolving the parties' 17-month marriage. The judgment incorporated the terms of a 19-page MSA signed by the parties and their attorneys.

Paragraph 2 of the MSA states "its purpose is to make a final and complete settlement of all rights and obligations between the parties." They stipulated that each had "read this Agreement thoroughly," were "fully aware of the contents, legal effect, and consequences," "completely informed as to the facts relating to the subject matter . . ., and as to the[ir] rights and liabilities," had "given careful and mature thought to the making of th[e] Agreement," and "[f]ully and completely underst[oo]d[] each provision . . . ." The MSA also declared it was "the final, complete and exclusive agreement of the parties concerning the subject matters covered."

2

The MSA identified and divided the parties' community assets and debts and listed each spouse's separate property interests. The parties mutually warranted that they had disclosed all known community assets and liabilities, neither had made "undisclosed gifts or transfers . . . of any community assets," and each promised not to incur "any liability on which the other will be or may become personally liable." Following each warranty paragraph was a separate paragraph establishing a remedy in the event of a breach of that warranty. The MSA further provided there were no reimbursement claims or "further payments . . . needed to equalize the division of assets and debts" or "other property, real or personal, to be divided between the parties." The parties agreed the court would retain jurisdiction "[t]o supervise the division of the assets and liabilities as the parties agreed" and "the overall enforcement of this Agreement."

Paragraphs 14.1 and 14.2 listed certain financial obligations and specified the spouse who was to be "responsible for" or "accept responsibility for" each account. However, paragraph 14.1.7 stated, "Husband's debt owed to Wife $400,000."

In 2009, Mahnaz Harris-Rafipoor (wife) obtained a writ of execution and levied on husband's bank account. He filed a claim of exemption. In addition, instead of following the statutorily authorized written demand and motion procedure for obtaining an acknowledgement of a satisfaction of judgment (Code Civ. Proc., § 724.050), husband also commenced a separate civil action against wife. (*Rafipoor v. Harris-Rafipoor* (Super. Ct. Orange County, 2009, No. 30-2009-00289633.) The verified complaint alleged he had paid over $948,000 of wife's expenses, including her rent, utilities, vehicle expenses, and health insurance after their divorce, and sought a determination "the indebtedness of paragraph 14.1.7 . . . has been satisfied in full[ and] is discharged."

At a hearing, the parties agreed wife could retain 25 percent of the account's funds with the balance returned to husband. They also stipulated this resolution was "without prejudice to any claim by [husband] based on the allegations that . . . the money judgment upon which this levy is based is valid and enforceable[,]

3

and . . . if said Judgment is valid and enforceable, it has been paid . . .[,] and . . . without prejudice to the causes of action . . . raised by" husband's civil complaint.

Husband subsequently voluntarily dismissed the civil action. He also filed for bankruptcy, but wife obtained relief from the automatic stay and obtained an order for him to appear for a judgment debtor examination. In response, husband moved to strike the order. He argued paragraph 14.1.7 merely assigned the debt to him and, since it did not order that he pay money to wife, it did not create a money judgment.

The court stayed the judgment debtor examination and granted several continuances on husband's motion. At one hearing, husband argued that even assuming a debt existed, he had satisfied it. Citing the 2009 stipulation, the court chose to bifurcate the issues and first determine whether a debt exists and, if so, then determine whether it had been paid. Husband also filed a motion for judgment on the pleadings.

On June 5, 2013, the trial court denied the motion for judgment on the pleadings and set an evidentiary hearing "to adjudicate the . . . issue as to the meaning o[f] paragraph 14.1.7." At a hearing two weeks later, the trial court ruled the paragraph was unambiguous, constituted a money judgment, and denied husband's motion to strike the judgment debtor examination. It also refused his request to introduce parol evidence on whether paragraph 14.1.7 was a money judgment. Husband declared his intent to appeal the court's ruling and requested the issuance of a stay on the judgment debtor examination pending the appeal's completion. The court and counsel agreed on a procedure for preparing a statement of decision to facilitate the appeal.

DISCUSSION

*1. Is the Order Appealable?*

The first issue presented here is whether the trial court's orders that determined paragraph 14.1.7 is a money judgment and denied husband's motion to strike

4

the judgment debtor examination constitutes appealable rulings. "The existence of an appealable judgment [or order] is a jurisdictional prerequisite to an appeal. A reviewing court must raise the issue on its own initiative whenever a doubt exists as to whether the trial court has entered a final judgment or other order or judgment made appealable by Code of Civil Procedure section 904.1." (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 126.) Husband argues the answer is yes because it is an order entered after judgment. (Code Civ. Proc., § 904.1, subd. (a)(2).) We disagree.

For a postjudgment order to be appealable under Code of Civil Procedure section 904.1, subdivision (a)(2), "the issues raised by the appeal from the order must be different from those arising from an appeal from the judgment" and "'the order must either affect the judgment or relate to it by enforcing it or staying its execution.'" (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 651-652; see *Baum v. Baum* (1959) 51 Cal.2d 610, 614-615 [postjudgment order affecting "enforcement of the judgment, whether such order favors the judgment creditor or the judgment debtor, is appealable"].) But the orders at issue here merely concern the court's denial of a motion to strike a judgment debtor examination and its finding on one of the intermediate issues raised by that motion.

A judgment debtor examination is a procedure "to furnish information *to aid in enforcement* of [a] money judgment." (Code Civ. Proc., § 708.110, subd. (a), italics added; *Imperial Bank v. Pim Electric, Inc.* (1995) 33 Cal.App.4th 540, 546-547 [judgment debtor examination is a "special procedure[] designed to . . . permit the judgment creditor to examine the judgment debtor . . . in order to discover property and apply it toward the satisfaction of the money judgment"]; *Kyne v. Eustice* (1963) 215 Cal.App.2d 627, 632 [same].) *Rogers v. Wilcox* (1944) 62 Cal.App.2d 978 dismissed a judgment debtor's appeal from the denial of its motion to quash an order for a judgment debtor examination. "Neither an order for appearance of a judgment debtor nor the order for his examination is in itself an end. Each is merely a step reviewable only after a final

5

order has been made.  It adjudicates no rights; it establishes no liabilities.  [Citation.]  It is not a special order made after final judgment though made subsequent to entry of the judgment.  [Citation.]  It bears no relation to the judgment.  It is a separate proceeding in an original action which is a substitute for the creditor's bill." (*Id.* at pp. 979-980; see *Fox Johns Lazar Pekin & Wexler, APC v. Superior Court* (2013) 219 Cal.App.4th 1210, 1216 [order denying motion to quash third party judgment debtor examination nonappealable].)

Here wife sought and obtained an order directing husband to appear for a judgment debtor examination.  The denial of husband's motion to strike the judgment debtor examination is subsequent to the judgment dissolving the parties' marriage and raises different issues, but it is preliminary to a final determination of the parties' rights and liabilities under the judgment.  (*Lakin v. Watkins Associated Industries, supra,* 6 Cal.4th at p. 654.)  Thus, his motion "was [merely] one of the steps taken in the course of a proceeding to obtain an order requiring appellant to disclose any property subject to execution." (*Rogers v. Wilcox, supra,* 62 Cal.App.2d at p. 979.)

The same analysis applies to the trial court's finding that paragraph 14.1.7 constitutes a money judgment.  This finding was merely an intermediate ruling preliminary to the court's decision on husband's motion to strike the judgment debtor examination, which we have just noted is itself nonappealable.

The record reflects the trial court and parties agreed to bifurcate the court's money judgment finding and prepare a statement of decision in an effort to expedite an appeal of that ruling.  But "[p]arties cannot create by stipulation appellate jurisdiction where none otherwise exists" (*Don Jose's Restaurant, Inc. v. Truck Ins. Exchange* (1997) 53 Cal.App.4th 115, 118-119, fn. omitted) and "[i]t makes no difference that this state of affairs is the product of a stipulation, or even of encouragement by the trial court" (*id.* at p. 118; see *In re Marriage of Loya* (1987) 189 Cal.App.3d 1636, 1638 ["'the parties cannot by any form of consent make a nonappealable order appealable'"]).

The Family Code does authorize a limited means of seeking immediate review of an intermediate ruling. Family Code section 2025 provides "Notwithstanding any other provision of law, if the court has ordered an issue or issues bifurcated for separate trial or hearing in advance of the disposition of the entire case, a court of appeal may order an issue or issues transferred to it for hearing and decision when the court that heard the issue or issues certifies that the appeal is appropriate. Certification by the court shall be in accordance with rules promulgated by the Judicial Council." California Rules of Court, rule 5.392 specifies the procedure for implementing the statute.

The present appeal involves a postjudgment proceeding preliminary to enforcing the judgment, not a prejudgment order. And even assuming Family Code section 2025 applies to postjudgment rulings, there was no compliance with the requirements for seeking issuance of a certification order or requesting this court to decide the matter. (*In re Marriage of Lafkas* (2007) 153 Cal.App.4th 1429, 1433-1434 [appellate court lacks jurisdiction where appellant "did not follow the [statutory] procedure . . . allowing an interlocutory appeal on a bifurcated issue" and "[n]o certificate of probable cause was obtained from the family law court"].)

Consequently, we conclude the appeal must be dismissed. "Nevertheless, on a purported appeal from a nonappealable order, the appellate court has discretion to treat the appeal as a petition for an extraordinary writ within the appellate court's original jurisdiction." (*In re Marriage of Ellis* (2002) 101 Cal.App.4th 400, 404.) Exercising our discretion, we construe this appeal as a petition for an extraordinary writ and thereby reach the merits of the case. (*Id.* at pp. 404-405; see *In re Marriage of Doherty* (2002) 103 Cal.App.4th 895, 898.)

*2. Is There a Money Judgment?*

Husband argues the trial court erred in finding paragraph 14.1.7 constitutes a money judgment because that paragraph does not use words such as "'pay'" or

7

"'payment'" and it would be inappropriate to imply the paragraph imposed such a duty on him. He further claims the court failed to recognize that, under the structure of the MSA, paragraph 14.1.7 constitutes merely a confirmation of a debt he owed to wife, not an adjudication of it.

The trial court correctly found paragraph 14.1.7 constitutes a money judgment. "In ascertaining the meaning of a judgment, we look to the same general rules that govern our efforts to detect the meaning of any other writing. [Citation.] Thus, we construe the judgment as a whole to give effect to its obvious intention [citation], and in the process we can resort to the entire record supporting the judgment [citation]. Further, in construing the effect of a judgment we apply the familiar maxim that the law respects the form of words less than their substance." (*In re Marriage of Farner* (1989) 216 Cal.App.3d 1370, 1375-1376.)

Code of Civil Procedure section 680.270 defines the phrase "'[m]oney judgment'" as "that part of a judgment that requires the payment of money." To be enforceable, a money judgment "must be stated with certainty and should specify the amount." (*Kittle v. Lang* (1951) 107 Cal.App.2d 604, 612; see *D'Arcy v. D'Arcy* (1928) 89 Cal.App. 86, 92.)

Paragraph 14.1.7 satisfies these requirements. The MSA was incorporated into the parties' judgment of dissolution and thus paragraph 14.1.7 is part of the judgment. The amount due is specified as $400,000. Further, the paragraph's use of the term "owed" establishes husband was required to pay that sum to wife. The word "owe" means "to be under an obligation to pay or repay in return for something received; be indebted in the sum of" or "to have an obligation to on account of something done or received: be indebted to." (Webster's 3d New Internat. Dict. (1981) p. 1612, col. 2; see Black's Law Dict. (9th ed. 2009) p. 1214, col. 2 ["owing" means "That is yet to be paid; owed; due"].)

8

*In re Marriage of Farner, supra,* 216 Cal.App.3d 1370 supports this conclusion. There the trial court issued an order declaring the wife "'shall receive as community property'" a specified percentage of the husband's military retirement pay. (*Id.* at p. 1374.) After further litigation, the wife sought recovery of retroactive benefits due to her from the date of the parties' separation to the date she began receiving payments from the federal government. The appellate court held this portion of the retirement benefits order was a money judgment. "In our view the nonretiree spouse's status as co-owner, not creditor, makes sense with respect to current and future payments forthcoming from the military, but once the retiree has received and converted to his or her exclusive use undivided benefits in which the other spouse has a community property interest, these definitions become fictions. While an interest in the retiree's retirement pay is a property interest, payments already received are nothing more than money in the hands of the retiree. In a practical sense the situation is no different than where the court awards one spouse a valuable asset and then orders that spouse to pay the other a certain sum as and for his or her community property interest therein. We conclude these labels cannot be called upon to defeat the nonretiree spouse's undisputed right to his or her share of this community property asset. Unquestionably the trial court has authority in a dissolution proceeding to effect the division of property by ordering the retiree to pay over the other's pro rata share of undivided benefits already received. [Citation.] Such an order would be a money judgment . . . ." (*Id.* at p. 1375; see *In re Marriage of Wilcox* (2004) 124 Cal.App.4th 492, 495, 501 [order "in favor of" one against the other party "in the sum of" a specified amount "is the epitome of a money judgment"].)

Husband notes paragraph 14 of the MSA is entitled "Community Property Debt." (Bold and some capitalization omitted.) Nonetheless, the caption does not alter our conclusion. The MSA declares, "The captions of this Agreement are employed solely for convenience and are not to be used as an aid in interpretation." A review of this paragraph's subparts reflects it covers much more than merely the parties'

9

community obligations. Further, as noted, in construing the judgment we emphasize substance over form. (*In re Marriage of Farner, supra,* 216 Cal.App.3d at p. 1376.) The other financial obligations described in paragraphs 14.1 and 14.2 are identified by the name or type of account and state the spouse to whom it is assigned or confirmed is "responsible for" or "accept[s] responsibility for" paying it.

Husband also cites to the fact the MSA declares, "No further payments shall be needed to equalize the division of assets and debts." But this statement appears in the paragraph immediately following the division of the parties' assets. He acknowledges paragraph 14.1.7 constitutes "a separate property debt" he owes to wife.

Next, husband mentions the heightened fiduciary responsibilities imposed on spouses by Family Code section 721. But there is no suggestion wife breached her fiduciary duties to him. In addition, the MSA states both parties were represented by counsel in negotiating its terms and contains warranties of full disclosure concerning assets, liabilities, gifts or other transfers of community property along with acknowledgments each party was "fully and completely informed as to the facts relating to the subject matter," had "given careful and mature thought to" it, and "underst[ood] each provision."

Husband argues "[t]he underlying obligation" between the parties "has not been adjudicated." But he fails to cite to anything in the appellate record or to any legal authority supporting this assertion. Further, this argument is contradicted by paragraph 14.1.7's express declaration he "owe[s] . . . Wife $400,000."

Finally, husband contends paragraph 14.1.7 is merely a confirmation of the debt to him and refers to Family Code section 2023. That statute authorizes a court to order one of the parties to pay an obligation to a creditor for the "benefit of either party or a child" (Fam. Code, § 2023, subd. (a)), and also declares "[t]he creditor has no right to enforce the order made under this section" (Fam. Code, § 2023, subd. (b)). But the

10

statute clearly contemplates an obligation owed to a third party creditor. This case involves an interspousal obligation husband acknowledges is his separate property debt.

Thus, the trial court properly found paragraph 14.1.7 constitutes a money judgment.

*3. Did the Court Err by Excluding Parol Evidence?*

Husband's final contention is that the trial court erred in precluding him from introducing parol evidence "to explain the terms in light of the course of dealings between the parties and where a mistake or imperfection of the writing was put in issue." The trial court did not err.

The parol evidence rule declares the "[t]erms set forth in a writing intended by the parties as a final expression of their agreement with respect to the terms included therein may not be contradicted by evidence of a prior agreement or of a contemporaneous oral agreement" (Code Civ. Proc., § 1856, subd. (a)), nor may "[t]he terms" of such a writing "be explained or supplemented by evidence of consistent additional terms" where "the writing is intended also as a complete and exclusive statement of the terms of the agreement." (Code Civ. Proc., § 1856, subd. (b).)

Generally, "[t]he court shall determine whether the writing is intended by the parties as a final expression of their agreement with respect to the terms included therein and whether the writing is intended also as a complete and exclusive statement of the terms of the agreement." (Code Civ. Proc., § 1856, subd. (d).) But here the MSA expressly declared "its purpose is to make a final and complete settlement of all rights and obligations between the parties" and "contain[s] the final, complete and exclusive agreement of the parties concerning the subject matters covered." The language of paragraph 14.1.7, "Husband's debt owed to Wife $400,000," does not involve technical terminology and the parties expressly acknowledged they were represented by counsel in negotiating the MSA, were "fully and completely informed as to the facts relating to the

11

subject matter of th[e] Agreement," and "[f]ully and completely underst[oo]d each provision." Thus, paragraph 14.1.7 is not subject to an interpretation other than husband is indebted to or obligated to pay wife the specified sum.

The 2009 stipulation referred to a claim by husband concerning the validity and enforceability of the dissolution judgment. But at the hearing on the nature of paragraph 14.1.7, husband acknowledged he was not challenging any other aspect of the 2003 judgment.

Thus, we conclude the trial court properly barred the admission of parol evidence to explain the meaning of paragraph 14.1.7.


DISPOSITION


The appeal is dismissed and, treating the appeal as a petition for an extraordinary writ, the petition is denied. The parties are to bear their own costs in this proceeding.


RYLAARSDAM, J.

WE CONCUR:


O'LEARY, P. J.


FYBEL, J.


12