Filed 8/18/20  Wilson v. Wilson CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| STEPHANIE WILSON, | |
| Appellant, | G056999 |
| v. | (Super. Ct. No. 12D005671) |
| DUANE WILSON, | O P I N I O N |
| Respondent. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Salvador Sarmiento, Judge.  Reversed and remanded with instructions.

Law Office of Mark Mazda and Mark Mazda for Appellant.

Law Offices of Lisa R. McCall and Lisa R. McCall for Respondent.

This family law case arises out of a divorce proceeding. The trial court entered a judgment, ordering, in relevant part, Duane Wilson to pay Stephanie Wilson $250,000 out of a retirement account Duane owned.[1] Later, Stephanie asserted Duane failed to pay her, and filed a request for order seeking $250,000 plus postjudgment interest. The court denied Stephanie's request. It determined the order to roll over a portion of Duane's retirement account was a transfer of property, not a money judgment, and interest did not accrue. We disagree. The court's postjudgment order is reversed and remanded for further proceedings consistent with this opinion.

FACTS

Stephanie filed for divorce from Duane in 2012. In 2015, the parties entered into two stipulations that resulted in final orders on the issues of marital property, spousal support, attorney fees, and expert costs. The first stipulation and order for judgment concerned real property and is not the subject of this appeal. The second stipulation and order for judgment (judgment) dispersed the marital assets.

The judgment awarded Stephanie $250,000 from Wells Fargo account number 2922 (Wells Fargo account) as her separate property. It required Duane to pay the money on or before February 15, 2015, "subject to Paragraph 23." The judgment further awarded to Stephanie a second sum of $250,000 held in Wells Fargo IRA account number 1722 (IRA account) as her separate property. Paragraph 4(o) of the judgment provided as follows: "The following property shall hereby be awarded and confirmed to Wife as her sole and separate property; Husband does hereby forever waive any and all rights in same: [¶] . . . The sum of $250,000 held within Wells Fargo IRA account [number] 1722. Said rollover shall occur on or before [February 15, 2015]." The judgment did not specify a destination for the rollover.

---

[1] Because the parties share the same last name, we refer to them by their first names for clarity and ease of reference.

Paragraph 23 of the judgment provided: "As and for Husband's contributive share of Wife's attorney, accountant [and] expert fees and costs, Husband shall pay to Denis [*sic*] Sperry the sum of $15,000 and to Lemkin, Barnes [&] Row Inc[.] the sum of $25,000. Said payments shall be paid on or before [February 15, 2015]. From the $250,000 owed to Wife, Husband shall pay to Lemkin, Barnes [& Row, Inc.] the sum of $32,000 for Wife's fees with Lemkin, Barnes [&] Row fees."

The judgment represented the "complete and final settlement of the parties' property rights, and all other rights arising out of or in any way connected with their marriage or their relationship whatsoever with the exception of those issues specifically reserved within this [judgment]." The parties further stipulated, "It is intended that upon execution of this [judgment], neither party shall have any claims against the other party, except as stated by this [judgment]."

In September 2017, Stephanie filed a writ of execution to enforce the judgment, requesting payment of $250,000 cash from the Wells Fargo account, along with costs and legal interest of $46,304.56. Two months later, Stephanie filed a request for order to compel compliance with the judgment (request for order). The request for order sought to compel Duane to comply with the judgment by immediately transferring $250,000 plus interest from the IRA account. It also requested $7,500 in attorney fees and costs. In her supporting declaration, Stephanie stated she had made repeated demands on Duane to make the $250,000 payment from the IRA account, but he had refused. Stephanie further declared that in March 2017, she hired an attorney to obtain an order directing Duane to make the payment, together with interest and attorney fees, but instead of filing a request for order, the attorney filed a writ of execution and levy instructions against the wrong bank account—the Wells Fargo account. As a result of the writ of execution, Duane's Wells Fargo account was levied and $224,369.56 (levied funds) was deposited into the attorney's trust account. Stephanie requested the levied funds be disbursed to her, but the attorney refused, stating Duane disputed the levy, and

3

instead deposited the levied funds with the trial court. Stephanie further declared the request for order sought $250,000 from the IRA account, interest of $69,726.00, and asked that the levied funds along with accrued interest be released to Duane thereafter. Finally, Stephanie asserted as follows: "I did not approve paragraph 23 of the [j]udgment. It was added by the attorneys without my knowledge or consent after I had signed the [s]tipulation. I only learned of paragraph 23 long after [j]udgment was entered."

Duane filed a responsive declaration to the request for order. Duane stated he did not consent to the order requested and instead requested the court find he had complied with the judgment and sanction Stephanie for bad conduct. Duane declared that shortly after the parties entered into the judgment, Stephanie asked him to pay her $40,000 directly but the court ordered that Duane pay Stephanie's attorney and expert. Stephanie told him that she wanted to negotiate her attorney fees. Duane agreed. He paid Stephanie a total of $290,000 from his Wells Fargo account, $250,000 cash owed to Stephanie, plus $40,000 in attorney and expert fees. Duane declared that in March 2019, Stephanie's former attorney, Lemkin, Barnes & Row, filed two writs of execution against him. One writ was for $57,000 payable to the firm for both Duane's and Stephanie's share of attorney fees owed. The other writ was for the $15,000 payable to Dennis Sperry,[2] for a total of $72,000. The funds were taken from Duane's Wells Fargo account, which he declared resulted in an overpayment of $72,000, plus $330 in fees.

Duane further explained, "At this point, I was concerned that if I rolled [the IRA account] monies I would never get the money she owed me, so . . . we agreed to wait to transfer the [IRA account] funds until we could resolve these credits." Shortly thereafter, $224,576.65 was garnished from his Wells Fargo account pursuant to the writ

---

[2] Neither party explains who Dennis Sperry is, and it is unclear from the record. We surmise he must be an expert, but since his precise involvement does not affect our decision, we did not request further clarification.

4

of execution, even though he had already paid Stephanie cash amounts owed from that account pursuant to the judgment. When Stephanie's counsel realized the funds had already been paid, she deposited the funds with the trial court and withdrew from the case.

In December 2017, the trial court noted it was holding $225,000, ordered the parties to prepare points and authorities and declarations regarding their positions, and set a continued hearing. Duane attached to his brief an e-mail from Stephanie's counsel confirming Duane had paid $290,000 to Stephanie.

In its July 13, 2018, minute order, the trial court determined as follows: "The [c]ourt would find that it's not a money judgment. That the party was granted ownership in the entity and that entity therefore belongs to both of them and that the party who was suppose[d] to move the money was holding it in trust for the receiving party. [¶] Therefore, the receiving party should receive that interest in the entity, the retirement, plus any mon[ie]s that were lost in terms of all pensions. So if there was any money lost as a result of the value of the investment, then the receiving party should receive that. [¶] . . . [¶] The [c]ourt rules it will not include the interest on the $72,000. Arrangement should be made to pay back the $72,000."

Approximately two months later, the trial court filed a findings and order after hearing. It stated, "The [c]ourt finds that the [j]udgment filed on February 3, 2015 . . . specifically paragraph 4(o) is not a money judgment. Therefore, the [c]ourt denies [Stephanie's] request for interest. [¶] . . . The [c]ourt finds that [Stephanie] owes [Duane] $72,320.00. No interest is due on said sum to date."

DISCUSSION

Stephanie asserts the judgment directing Duane to roll over funds from his IRA account was a money judgment upon which postjudgment interest accrued. She maintains the trial court erred by determining the judgment was a transfer of property not

5

entitled to postjudgment interest.  We agree.  The matter is reversed and remanded for further proceedings consistent with this opinion.

Because the material facts are undisputed, our review is de novo.  (*Topanga and Victory Partners v. Toghia* (2002) 103 Cal.App.4th 775, 779-780.)  A '"[m]oney judgment"' is defined by statute as "that part of a judgment that requires the payment of money."  (Code Civ. Proc., § 680.270.)  A money judgment "must be stated with certainty and should specify the amount.  [Citations.]"  (*Kittle v. Lang* (1951) 107 Cal.App.2d 604, 612.)  Code of Civil Procedure section 685.010, subdivision (a), provides, "Interest accrues at the rate of 10 percent per annum on the principal amount of a money judgment remaining unsatisfied."

Paragraph 4(o) of the judgment satisfies the requirements of a money judgment.  The amount due is specified as $250,000.  It is undisputed Duane was required to pay that sum to Stephanie on February 15, 2015.  The trial court ignored the express language of the judgment because the $250,000 was coming out of an IRA account.  But as shown below, the source of funds should not alter the analysis.

*In re Marriage of Farner* (1989) 216 Cal. App. 3d 1370 (*Farner*), supports this conclusion.  There the trial court issued an order awarding wife a specified percentage of the husband's military retirement pay.  (*Id*. at p. 1374.)  Wife sought recovery of retroactive benefits due to her from the date of the parties' separation to the date she began receiving payments from the federal government.  (*Id*. at pp. 1374-1375.)  The appellate court held this retroactive portion of the retirement benefits order was a money judgment.  (*Id*. at p. 1375.)  "While an interest in the retiree's retirement pay is a property interest, payments already received are nothing more than money in the hands of the retiree.  In a practical sense the situation is no different than where the court awards one spouse a valuable asset and then orders that spouse to pay the other a certain sum as and for his or her community property interest therein.  We conclude these labels cannot be called upon to defeat the nonretiree spouse's undisputed right to his or her share of this

6

community property asset. Unquestionably the trial court has authority in a dissolution proceeding to [a]ffect the division of property by ordering the retiree to pay over the other's pro rata share of undivided benefits already received. [Citation.] Such an order would be a money judgment." (*Ibid*.; see *In re Marriage of Wilcox* (2004) 124 Cal.App.4th 492, 495, 501 [order "in favor of" one against the other party "in the sum of" a specified amount "is the epitome of a money judgment"].)

Here, like the situation in *Farner*, the IRA account contained money already received by Duane. This is distinguishable from future retirement or pension payments, or judgments that are ambiguous as to time or amounts. Instead, this judgment required Duane to pay to Stephanie a specified sum of money, from an already funded IRA account. The trial court erred by determining this was not a money judgment. Therefore, we reverse the court's postjudgment order. As discussed below, the matter must also be remanded for additional proceedings.

While we determine Stephanie is entitled to legal interest on the judgment, we recognize computing that interest requires additional fact finding. The record reflects Duane was required to pay Stephanie $250,000 from his IRA account on February 15, 2015. It appears from the record, however, that Duane made additional payments to Stephanie and/or her counsel. Furthermore, at some point, which we surmise occurred in early 2016, the parties purportedly agreed to postpone Duane's payment to Stephanie from his IRA account until they could resolve Duane's overpayment.

On remand, the trial court shall conduct an evidentiary hearing, and consider such testimony and documentary evidence as is necessary to determine, among other things: the date on which interest on the judgment accrued; the impact of any overpayments made by Duane on his outstanding obligation; and whether the parties reached an agreement to toll Duane's obligation to pay interest on the judgment. The court must also consider and rule upon Stephanie's request for attorney fees. We decline

7

to order the trial court to retain the levied funds, as it appears those funds were levied in error from the wrong account.

## DISPOSITION

The postjudgment order is reversed and remanded for further proceedings consistent with this opinion.  Stephanie shall recover her costs on appeal.


O'LEARY, P. J.

WE CONCUR:


BEDSWORTH, J.


ARONSON, J.

8