Filed 1/24/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re the Marriage of MATTHEW W. CLARKE and CLAUDIA G. AKEL. | |
| MATTHEW W. CLARKE, Respondent, v. CLAUDIA G. AKEL, Appellant. | A149052 (San Mateo County Super. Ct. No. FAM0120913) |

Under Family Code section 1615, subdivision (c)(2), a premarital agreement is unenforceable as to a party who was not represented by counsel and who did not have at least seven calendar days between the date he or she was "first presented" with the agreement and the date it was signed. (*In re Marriage of Hill and Dittmer* (2011) 202 Cal.App.4th 1046, 1055 (*Hill*); *In re Marriage of Caldwell-Faso & Faso* (2011) 191 Cal.App.4th 945, 949 (*Caldwell-Faso*).) Evidence Code section 622 provides that the facts recited in a written instrument, other than the recital of a consideration, "are conclusively presumed to be true as between the parties thereto[.]"

We conclude that when the evidence shows an unrepresented party to a premarital agreement was not provided with the seven-day period for review required by Family Code section 1615, subdivision (c)(2), the agreement's recitation that the review period was provided is not binding. In other words, the seven-day review period may not be circumvented by inserting language into a premarital agreement acknowledging that both sides had seven days to review the agreement, when in fact they did not. We also

1

conclude that Family Code section 1615, subdivision (c)(3), which requires a written advisement and waiver of an unrepresented party's rights under a premarital agreement, applies to an agreement that was initially generated by the unrepresented party. We therefore affirm the trial court's order determining the premarital agreement in this case to be unenforceable.

## I. BACKGROUND

Respondent Matthew Clarke (Matthew) and appellant Claudia Akel (Claudia)[1] became engaged to be married and set a wedding date of March 7, 2008. On February 26, 2008, Mathew downloaded a form from Nolo Press and used it as a basis for a draft premarital agreement, which he emailed to Claudia. Among other things, and as relevant here, the draft agreement provided that Matthew owned the real property at 538 Palomar Drive, that the property would continue to be Matthew's separate property after the marriage, that the property would become community property "after 7 years of marriage," that Claudia would own a two-percent interest in the property for every year they were married if the couple divorced before seven years of marriage, and that "Claudia and any children will have lifetime tenancy in the house."

Matthew retained attorney Clifford Chernick to represent Claudia in the negotiation and execution of the premarital agreement. Matthew did not believe he needed an attorney himself and never sought the advice of an attorney regarding the agreement. On February 29, 2008, Mathew emailed a copy of the draft premarital agreement to Chernick's office. On March 3, 2008, Matthew emailed a revised draft of the agreement to Chernick's office, which contained the same provisions regarding 538 Palomar Drive as the original draft. Chernick reviewed the drafts and made some notes regarding questions he had.

Attorney Chernick met with Claudia and Matthew in person on March 4, 2008. Chernick advised Matthew he should seek independent legal counsel, but Matthew told

---

[1]     As is customary in marital proceedings, the parties refer to themselves by their first names. We adopt this convention.

2

Chernick he was able to represent himself. Chernick spoke to Claudia outside Matthew's presence to make sure she understood the agreement. He also discussed some of the provisions of the draft agreement with Matthew, including (1) what was meant by "divorce" (separation, filing for dissolution, final judgment of dissolution) in the provision giving Claudia a percentage interest in 538 Palomar Drive if they divorced before seven years of marriage; and (2) whether Matthew intended to waive his right to reimbursement of his separate property interest in 538 Palomar Drive pursuant to Family Code section 2640 if that property was transmuted to community property after seven years, as provided in the agreement.[2]

On March 5, 2008, the day after the meeting, Chernick revised the agreement and sent both an unmarked and a red-lined version to Matthew and Claudia. The draft prepared by Chernick contained additional provisions that had not been included in the original drafts prepared by Matthew: (1) both parties waived any separate property interest they might have in their community property, including any right to reimbursement under Family Code section 2640; (2) Matthew specifically waived his right to reimbursement of separate property contributions to 538 Palomar Drive; and (3) Matthew agreed to pay all expenses on the property at 538 Palomar Drive as long as Claudia's lifetime tenancy continued. The agreement also stated that each party had had more than seven days to review the premarital agreement before executing it.

The parties signed a final version of the premarital agreement on March 6, 2008, which was substantially the same as that provided by Chernick on March 5, and which included the language acknowledging that each party had had more than seven days to review the agreement. Matthew executed a separate written waiver of legal counsel on the same date acknowledging that attorney Chernick was representing only Claudia, that

---

2 Family Code section 2640, subdivision (b), provides in relevant part: "In the division of the community estate under this division, unless a party has made a written waiver of the right to reimbursement or has signed a writing that has the effect of a waiver, the party shall be reimbursed for the party's contributions to the acquisition of property of the community property estate to the extent the party traces the contributions to a separate property source."

Chernick had advised him to retain independent legal counsel, and that he was financially able to do so but was electing to waive his right to consult with an independent attorney before signing the agreement.

The parties separated in 2013 or 2014, and this dissolution action ensued. Claudia sought enforcement of the premarital agreement and in particular the provision giving her a lifetime tenancy at 538 Palomar Drive. The issue was bifurcated and a trial was held at which Matthew, Claudia and Chernick testified to the facts set forth above.

The trial court concluded the agreement was unenforceable under Family Code section 1615, subdivision (c)(2), because Matthew was not presented with the final version of the agreement at least seven days before its execution. The court also found the agreement to be unenforceable under Family Code section 1615, subdivision (c)(3), because Matthew had not been provided with a written advisement of the rights he was relinquishing under the agreement and did not execute a written waiver of those rights. The order was certified for immediate appeal. (Fam. Code, § 2025; Cal. Rules of Court, rule 5.392.)

## II. DISCUSSION

Family Code section 1615 provides that a premarital agreement is not enforceable if it is not entered into "voluntarily." (§ 1615, subd. (a)(1.).) Under Family Code section 1615, subdivision (c), it shall be deemed that a premarital agreement was not executed voluntarily unless the trial court makes five findings, including "(1) The party against whom enforcement is sought was represented by independent legal counsel at the time of signing the agreement or, after being advised to seek independent legal counsel, expressly waived, in a separate writing, representation by independent legal counsel. [¶] (2) The party against whom enforcement is sought had not less than seven calendar days between the time that party was first presented with the agreement and advised to seek independent legal counsel and the time the agreement was signed. [¶] (3) The party against whom enforcement is sought, if unrepresented by legal counsel, was fully informed of the terms and basic effect of the agreement as well as the rights and obligations he or she was giving up by signing the agreement, and was proficient in the

4

language in which the explanation of the party's rights was conducted and in which the agreement was written. The explanation of the rights and obligations relinquished shall be memorialized in writing and delivered to the party prior to signing the agreement. The unrepresented party shall, on or before the signing of the premarital agreement, execute a document declaring that he or she received the information required by this paragraph and indicating who provided that information. [¶] (4) The agreement and the writings executed pursuant to paragraphs (1) and (3) were not executed under duress, fraud, or undue influence, and the parties did not lack capacity to enter into the agreement. [¶] (5) Any other factors the court deems relevant."

Section 1615, subdivision (c), " 'places an evidentiary burden upon the party *seeking to enforce* a premarital agreement: He or she must be prepared to present evidence sufficient for the court to make the [] findings; otherwise, the premarital agreement *must* be held unenforceable as having been *involuntarily* executed." (*Caldwell-Faso*, *supra*, 191 Cal.App.4th 945, 956, quoting (Hogoboom and King, California Practice Guide: Family Law (The Rutter Group 2010) paragraph 9:152.1, page 9-41.) A trial court's factual findings regarding the voluntariness of a premarital agreement are reviewed under the substantial evidence standard, which requires that all legitimate and reasonable inferences be indulged to uphold the ruling below. (*Hill & Dittmer*, *supra*, 202 Cal.App.4th at p. 1059.) The trial court's interpretation of a statute is subject to de novo review. (*Diablo Valley College Faculty Senate v. Contra Costa Community College Dist.* (2007) 148 Cal.App.4th 1023, 1031.)

Under Family Code section 1615, subdivision (c)(2), a premarital agreement may not be enforced against a party who was not represented during negotiations unless that party had "seven calendar days between the time that party was first presented with the agreement and advised to seek legal counsel and the time the agreement was signed." (See *Caldwell-Faso*, *supra*, 191 Cal.App.4th at p. 962.) Here, the final draft of the premarital agreement was sent to Matthew by attorney Chernick on March 5, 2007, and included significant provisions that were not a part of the initial draft prepared by Matthew himself. In particular, the final draft included a waiver of Matthew's statutory

5

right to reimbursement of his separate property contribution to the home at 538 Palomar Drive and an agreement that Matthew would pay all of the expenses for the home for the duration of Claudia's lifetime tenancy. Given the material nature of these additions to the original draft, substantial evidence supports the determination that Matthew was "first presented" with the agreement on March 5. Additionally, Matthew was not "advised to seek independent legal counsel" until his meeting with Chernick on March 4, 2007. Whether we calculate the seven-day period as running from March 4, 2007, or March 5, 2007, fewer than seven days elapsed between those dates and the execution of the premarital agreement on March 6, 2007.

Claudia argues that Matthew must be deemed to have had seven days to review the premarital agreement because Paragraph 11(I), inserted by attorney Chernick, stated: "Each of us acknowledges that he/she received this Agreement more than seven days before executing it, and had ample time to review this Agreement with independent legal counsel and other professional advisors before signing it." Claudia relies on Evidence Code section 622, which provides, "The facts recited in a written instrument are conclusively presumed to be true as between the parties thereto, or their successors in interest; but this rule does not apply to the recital of a consideration."

Evidence Code section 622 is based upon the doctrine of estoppel by contract; i.e., "the principle that parties who have expressed their mutual assent are bound by the contents of the instrument they have signed, and may not thereafter claim that its provisions do not express their intentions or understanding." (*City of Santa Cruz v. Pacific Gas & Electric Co.* (2000) 82 Cal.App.4th 1167, 1176–1177.) The statute does not apply to situations not involving arm's length negotiations; moreover, it does not apply when the contract itself was invalid. (*Ibid.*; *Bruni v. Didion* (2008) 160 Cal.App.4th 1272, 1291.) Family Code section 1615, subdivision (c)(2), provides that a premarital agreement is involuntary, and thus invalid, when an unrepresented party has had fewer than seven days to review the agreement. The seven-day rule is obviously designed to protect parties who enter into a premarital agreement without legal

6

representation, and this policy would be thwarted if the rule could be satisfied by the inclusion of boilerplate language that did not reflect the true facts.

Even if we were to apply Evidence Code section 622 and conclude that Claudia met her burden of establishing that Matthew had seven days to review the agreement, we would not reverse. The trial court determined the premarital agreement was invalid for an additional reason, namely, that Matthew, as an unrepresented party, was not advised in writing of the rights he was giving up as a consequence of the agreement and did not execute a written waiver of those rights, as required by Family Code section 1615, subdivision (c)(3). Claudia argues this provision does not apply because Matthew generated the initial draft of the premarital agreement, but the statute contains no language suggesting that a party who drafts an agreement without the assistance of counsel can be deemed to have thereby been advised of the rights he or she is waiving or to have waived those rights. Matthew's written waiver of his right to counsel, while sufficient to satisfy Family Code section 1615, subdivision (c)(1), does not satisfy subdivision (c)*(3)*.

Finally, Claudia argues that the trial court should have only invalidated the provisions that were added by attorney Chernick and enforced the remainder of the premarital agreement, which appellant himself drafted. She reasons that appellant had more than seven days between the time he generated the first draft of the agreement on February 26, 2007, and the time he executed the final version on March 6, 2007. We are not persuaded. Family Code section 1615 renders "a premarital agreement" unenforceable against a party who did not execute the agreement voluntarily, and further provides that an agreement is not voluntarily executed unless certain predicates have been established. (Fam. Code, § 1615, subds. (a), (c).) Given the plain language of the statute, we are not at liberty to selectively enforce portions of an agreement when any of those predicates are lacking. (Contrast *In re Marriage of Facter* (2013) 212 Cal.App.4th 967, 984–985 [unconscionable waivers of spousal and child support were severable from remainder of 1994 premarital agreement, which was governed by prior version of Family Code § 1615, providing " 'a premarital agreement will be enforced unless the party

7

resisting enforcement of the agreement can demonstrate either (1) that he or she did not enter into the contract voluntarily, or (2) that the contract was unconscionable when entered into *and* that he or she did not have actual or constructive knowledge of the assets and obligations of the other party and did not voluntarily waive knowledge of such assets and obligations.' "].)  And, assuming the portions of the agreement drafted by appellant could be said to have been "presented" to him seven days before he signed it pursuant to Family Code section 1615, subdivision (c)(2), there is nothing in writing to show he was advised of the rights he was giving up and no written waiver of those rights pursuant to Family Code section 1615, subdivision (c)(3).  Thus, even those provisions drafted by Matthew himself must be deemed to have been involuntarily executed as having been unaccompanied by the necessary advisement and waiver.

The trial court did not err in concluding the premarital agreement was invalid due to a lack of compliance with Family Code section 1615, subdivision (c)(2) and (3).

### III.  DISPOSITION

The judgment is affirmed.  Costs are awarded to respondent.

_____

NEEDHAM, J.

We concur.

_____

JONES, P.J.

_____

BRUINIERS, J.

(A149052)

9

Superior Court of San Mateo County, No. FAM0120913, Don R. Franchi, Judge.

Ester Adut for Appellant.

DeLacy Reibel Family Law Group, Charles Howard DeLacey and Eric Leitner for Respondents.