Filed 8/2/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PETER J. LAST, | |
| Petitioner, | |
| v. | G060943 |
| THE SUPERIOR COURT OF ORANGE COUNTY, | (Super. Ct. No. 21D003998) |
| | O P I N I O N |
| Respondent; | |
| DEBRA MICHELLE LAST, | |
| Real Party in Interest. | |

Original proceedings; petition for a writ of mandate to challenge an order of the Superior Court of Orange County, Sheila Recio, Judge. Petition denied.

Holstrom, Block & Parke, Ronald B. Funk; Last Law Firm and Andrew Todd Last for Petitioner.

No appearance for Respondent.

Law Offices of Lisa R. McCall, Lisa R. McCall and Erica M. Baca for Real Party in Interest.

INTRODUCTION

Family Code section 1615, subdivision (c)[1] (section 1615(c)) creates a presumption "that a premarital agreement was not executed voluntarily" unless the trial court makes five designated findings. In this case, we hold the court had jurisdiction and discretion to award temporary spousal support, notwithstanding a waiver of spousal support in a premarital agreement, because the court did not make, and was not requested to make, the five findings under section 1615(c) that were necessary to rebut the presumption that the premarital agreement was not executed voluntarily.

Before Peter J. Last and Debra Michelle Last[2] were married in June 2002, they entered into a premarital agreement which included a provision by which Debra purported to waive any right to receive spousal support in the event the marriage ended in dissolution. When the marriage did end in dissolution, Debra sought, and the trial court awarded her, temporary spousal support. The court did not adjudicate the issue whether the premarital agreement was enforceable but granted Peter's request to bifurcate that issue.

Peter argues the trial court erred by awarding Debra temporary spousal support because the premarital agreement is presumed to be valid and, absent a determination the agreement is unenforceable, it barred an award of temporary spousal support.

While we agree with Peter that premarital agreements are no longer disfavored and are not per se unenforceable, Peter is incorrect in asserting the premarital agreement is presumed valid simply because it facially appears to satisfy the

---

[1] All statutory references are to the Family Code.

[2] As is customary in family law cases, we refer to the parties by first name to avoid confusion, and not out of disrespect.

requirements of section 1615(c)(1) and (2). To the contrary, a premarital agreement is presumed to have not been executed voluntarily, and is therefore unenforceable, *unless* the trial court *finds* in writing or on the record that the agreement satisfies the requirements of section 1615(c)(1) and (2).

Although the premarital agreement in this case might appear to satisfy the requirements of section 1615(c)(1) and (2), the trial court made no findings on the subject, and it is the court's *findings* that rebut the presumption of involuntary execution. Peter did not ask the trial court to conduct a facial review of the agreement and make such findings. Thus, when the court ordered temporary spousal support, the premarital agreement was deemed not to have been voluntarily executed, and, therefore, the spousal support waiver did not prevent the court from awarding Debra temporary spousal support.

We also conclude the trial court reserved jurisdiction and therefore has the ability to modify the support order retroactively to the first support payment if the court ultimately determines the premarital agreement is enforceable. Although we believe this reservation of jurisdiction does not make the temporary spousal support order nonappealable, we resolve any doubts about appellate jurisdiction by treating the appeal as a petition for writ of mandate. Finally, we conclude there are means by which Peter can seek reimbursement from Debra in the event the trial court ultimately determines the premarital agreement is enforceable and retroactively modifies the temporary spousal support order.

Accordingly, we deny the petition for writ of mandate.

FACTS AND PROCEDURAL HISTORY

Peter and Debra were married on June 30, 2002. Before marrying, they executed a premarital agreement (the Premarital Agreement). The salient provisions of the Premarital Agreement are: (1) Debra waived the right to receive spousal support or

3

alimony from Peter; (2) in consideration for the spousal support waiver, Peter agreed to pay Debra the following: (a) the sum of $16,000 within three days of their marriage as Debra's separate property, (b) $3,500 upon completion of each of the seventh, eighth, ninth and tenth years of marriage ($14,000 total), and (c) $4,500 upon completion of each of the eleventh, twelfth, thirteenth, fourteenth and fifteenth anniversaries ($22,500 total); and (3) all equity in Peter's separate property residence was transmuted by Peter into community property.

In June 2021, Debra filed a petition for dissolution of her marriage to Peter. In August 2021, she filed a request for temporary spousal support and attorney fees (the RFO).

In September 2021, Peter filed a responsive declaration. He alleged Debra had waived her right to receive spousal support or alimony in the event of dissolution and that the Premarital Agreement was valid. He requested the court "bifurcate the issue of the validity of the Premarital Agreement, and all its terms, and continue this hearing on spousal support until that preliminary issue is adjudicated."

The trial court held a hearing on the RFO on September 27, 2021. During the hearing, Debra's counsel challenged the validity of the Premarital Agreement on the ground the agreement was unconscionable at the time of enforcement due to a significant income disparity between the parties.

The trial court granted Debra's request for spousal support and, based on the parties' respective income and expense declarations and a DissoMaster report, ordered temporary spousal support in the amount of $8,511 per month. The court denied Debra's request for attorney fees and set a status conference to discuss discovery and set a hearing on the validity of the Premarital Agreement. The court stated, "[T]o be clear, the order regarding spousal support . . . may be reallocated at the conclusion, obviously, of course, for example if the premarital agreement is found to be valid and there's a

4

determination that there was no spousal support, obviously [Peter] will be given credits at the conclusion of the case." Peter timely filed a notice of appeal.

DISCUSSION

I. *Standard of Review*

We review an order granting or denying temporary spousal support under the abuse of discretion standard. (*In re Marriage of Wittgrove* (2004) 120 Cal.App.4th 1317, 1327 (*Wittgrove*).) "'The abuse of discretion standard . . . measures whether, given the established evidence, the act of the lower [court] falls within the permissible range of options set by the legal criteria.'" (*Bank of America, N.A. v. Superior Court* (2013) 212 Ca1.App.4th 1076, 1089.) The scope of the court's discretion is limited by law governing the subject of the action taken. (*Ibid*.) An action that transgresses the bounds of the applicable legal principles is deemed an abuse of discretion. (*Ibid*.) A trial court's decision is an abuse of discretion if it is based on an error of law (*In re Tobacco II Cases* (2009) 46 Ca1.4th 298, 311; *Pfizer Inc. v. Superior Court* (2010) 182 Ca1.App.4th 622, 629) or if the court's factual findings are not supported by substantial evidence (*Millview County Water Dist. v. State Water Resources Control Bd*. (2016) 4 Ca1.App.5th 759, 769).

II. *The Trial Court Had Discretion to Award Temporary Spousal Support Because the Premarital Agreement is Presumed to Have Been Involuntarily Executed*

Peter argues the Premarital Agreement and its spousal support waiver are presumed to be valid and enforceable because the agreement facially complies with the requirements of section 1615(c). As a consequence, Peter argues, Debra bears the burden of proving the Premarital Agreement is unconscionable, and, unless and until the trial

5

court finds the Premarital Agreement or its spousal support waiver to be unconscionable or otherwise invalid, Debra may not receive temporary spousal support.[3]  We disagree.

### A.  Background Law:  The Presumption of Involuntary Execution

Temporary spousal support during the pendency of a proceeding for dissolution of marriage is addressed in section 3600.  Subdivision (a) of section 3600 provides that a court may order either spouse to pay any amount that is necessary for the support of the other spouse based on the supported party's need and the supporting party's ability to pay.  (*Wittgrove, supra,* 120 Cal.App.4th at p. 1327.)  The purpose of temporary spousal support is to "'maintain the living conditions and standards of the parties in as close to the status quo position as possible pending trial and the division of their assets and obligations.'"  (*Ibid*.)  A court has discretion under section 3600 to award funds that would "provide [the spouse] with whatever is needed by her to litigate properly her side of the controversy."  (*In re Marriage of Askmo* (2000) 85 Cal.App.4th 1032, 1039.)

Premarital agreements that include waivers of spousal support do "not violate public policy and [are] not per se unenforceable."  (*In re Marriage of Pendleton & Fireman* (2000) 24 Cal.4th 39, 54 (*Pendleton*).)  However, spousal support waivers are not per se *enforceable*.  Section 1612, subdivision (c)[4] prohibits the enforcement of

---

[3]  In his reply brief, Peter suggests that the trial court erred by awarding Debra temporary support because "the record reflects she will be able to pay her reasonable living expenses."  If Peter is making that argument, it is forfeited because he did not make it in the appellant's opening brief.  (*Gund v. County of Trinity* (2020) 10 Cal.5th 503, 525; *Chicago Title Ins. Co. v. AMZ Ins. Services, Inc.* (2010) 188 Cal.App.4th 401, 427-428 [arguments raised for the first time in the appellant's reply brief are forfeited].)

[4]  Section 1612 is part of the Uniform Premarital Agreement Act (§ 1600 et seq.), which was enacted in 1985.  (*Pendleton, supra*, 24 Cal.4th at p. 43, fn. 3.)

premarital agreements with spousal support waivers if "the party against whom enforcement of the spousal support provision is sought was not represented by independent counsel at the time the agreement containing the provision was signed, or if the provision regarding spousal support is unconscionable at the time of enforcement." (§ 1612, subd. (c).)  An otherwise unenforceable spousal support provision in a premarital agreement does not become enforceable solely because the party against whom enforcement is sought was represented by independent counsel.

Section 1615 sets forth the criteria for determining whether a premarital agreement is enforceable.  Section 1615, subdivision (a) states:  "A premarital agreement is not enforceable if the party against whom enforcement is sought proves either of the following:  [¶]  (1) That party did not execute the agreement voluntarily.  [¶]  (2) The agreement was unconscionable when it was executed and, before execution of the agreement, all of the following applied to that party:  [¶]  (A) That party was not provided a fair, reasonable, and full disclosure of the property or financial obligations of the other party.  [¶]  (B) That party did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided.  [¶]  (C) That party did not have, or reasonably could not have had, an adequate knowledge of the property or financial obligations of the other party."

Although section 1615, subdivision (a) places the ultimate burden of proof on the party claiming the premarital agreement is unenforceable, it does not raise a presumption that the premarital agreement is enforceable.  To the contrary, section 1615(c) states, "For the purposes of subdivision (a), it shall be deemed that a premarital agreement was *not* executed voluntarily *unless* the court *finds* in writing or on the record all of the following:  [¶]  (1) The party against whom enforcement is sought was represented by independent legal counsel at the time of signing the agreement or, after being advised to seek independent legal counsel, expressly waived, in a separate writing, representation by independent legal counsel.  The advisement to seek independent legal

7

counsel shall be made at least seven calendar days before the final agreement is signed. [¶] (2) One of the following: [¶] (A) For an agreement executed between January 1, 2002, and January 1, 2020, the party against whom enforcement is sought had not less than seven calendar days between the time that party was first presented with the final agreement and advised to seek independent legal counsel and the time the agreement was signed. This requirement does not apply to nonsubstantive amendments that do not change the terms of the agreement. [¶] (B) For an agreement executed on or after January 1, 2020, the party against whom enforcement is sought had not less than seven calendar days between the time that party was first presented with the final agreement and the time the agreement was signed, regardless of whether the party is represented by legal counsel. This requirement does not apply to nonsubstantive amendments that do not change the terms of the agreement." (*Ibid*., italics added.) This list is a series of objectively ascertainable factors which, if found by the trial court, would overcome the presumption of involuntary execution.

Section 1615(c) in effect creates a presumption that a premarital agreement is *unenforceable* on the ground it was not executed voluntarily. Legislative history confirms that interpretation. The Legislative Counsel's Digest of Senate Bill No. 78, which added subdivision (c) to section 1615, states, "[T]his bill would set forth specified findings that the court is required to make in order to find that the [premarital] agreement was executed voluntarily." (Legis. Counsel's Dig., Sen. Bill No. 78 (2001-2002 Reg. Sess.).) The Senate Judiciary Committee Analysis likewise states, "[T]his bill would provide that a court shall find that a premarital agreement was not executed voluntarily unless the court finds [listing required findings]." (Sen. Com. on Judiciary, com. on Sen. Bill No. 78 (2001-2002 Reg. Sess.).) Thus, as summarized in *In re Marriage of Cadwell-Faso & Faso* (2011) 191 Cal.App.4th 945: "Among other matters, [Senate Bill No. 78] added subdivision (c) [to section 1615], which codifies the set of circumstances which, together, will defeat *the default presumption that a premarital agreement was not*

8

*executed voluntarily*.  Although under section 1615, subdivision (a), the party challenging enforceability of a premarital agreement bears the burden of proving involuntary execution or unconscionability, subdivision (c) lightens that burden when the contest centers on the issue of voluntary execution.  The law now *deems* that a premarital agreement is not voluntarily executed unless the court makes *all* of the five designated findings.  *With the five findings, the presumption of involuntary execution* is overcome as a matter of law."  (*Id*. at p. 956, italics added.)

Section 1615(c) thus "'places an evidentiary burden upon the party *seeking to enforce* a premarital agreement:  He or she must be prepared to present evidence sufficient for the court to make the § 1615(c)(1) through (5) findings; otherwise, the premarital agreement *must* be held unenforceable as having been *involuntarily* executed.'"  (*In re Marriage of Cadwell-Faso, supra*, 191 Cal.App.4th at p. 956; see *In re Marriage of Clarke & Akel* (2018) 19 Cal.App.5th 914, 919-920.)

Accordingly, while a premarital agreement might appear on its face to satisfy the conditions of section 1615(c)(1) and (2), it is the trial court's findings that rebut the presumption that a premarital agreement was involuntarily executed.  Unless and until the court makes such findings, a premarital agreement must be deemed to have been executed involuntarily and therefore to be unenforceable.

B.  The Trial Court Made No Findings Under Section 1615(c)(1) and (2) and Was Not Asked to Do So

In the present case, the trial court did not make findings under section 1615(c)(1) and (2) and, as a consequence, the Premarital Agreement must be deemed to have been involuntarily executed at the time the court ordered temporary spousal support. Because the Premarital Agreement was deemed to have been involuntarily executed, the court retained authority under section 3600 to award temporary spousal support to Debra.

9

When the trial court heard Debra's RFO it did not have jurisdiction to conduct a facial review of the Premarital Agreement and make findings under section 1615(c). The court had jurisdiction only to decide the matters set for hearing that day, which were Debra's RFO, which sought temporary spousal support and need-based attorney fees, and Peter's responsive declaration, which sought bifurcation of trial on the validity of the Premarital Agreement and a continuance of the hearing on spousal support. (*County of Los Angeles v. Superior Court* (2015) 242 Cal.App.4th 475, 488.) Peter had not brought his own request for an order, and at the hearing his counsel did not ask the court to make findings under section 1615(c) but again requested the court to bifurcate the issue of the enforceability of the Premarital Agreement.

Peter relies on *Pendleton* to support his argument that the trial court could not award temporary spousal support before resolving the issue of whether the Premarital Agreement is enforceable. In *Pendleton,* the California Supreme Court addressed the issue of "whether a premarital agreement in which the parties to be married waive the right to spousal support in case of dissolution is enforceable." (*Pendleton, supra*, 24 Cal.4th at p. 41.) In resolving that issue, the court engaged in an extensive and thorough discussion of the development of the law and evolving public attitudes towards dissolution and child support. (*Id*. at pp. 44-53.) The court concluded that "public attitude and contemporary official policy" on those subjects had "changed substantially over the past century" (*id*. at p. 52) and as a consequence a reassessment was warranted of the rule that premarital waivers of spousal support are unenforceable (*id*. at p. 53). The court reassessed that rule and held: "[N]o public policy is violated by permitting enforcement of a waiver of spousal support executed by intelligent, well-educated persons, each of whom appears to be self-sufficient in property and earning ability, and both of whom have the advice of counsel regarding their rights and obligations as marital partners at the time they execute the waiver. Such a waiver does not violate public policy and is not per se unenforceable. . . ." (*Id*. at pp. 53-54.)

10

Peter argues *Pendleton* "completely invalidates [Debra's] position and the trial court's ruling." Peter reads too much into that case. The only issue before the Supreme Court in *Pendleton* was whether a premarital agreement in which the parties waived the right to spousal support in the event of dissolution was per se unenforceable. The *Pendleton* court did not address whether a court can order temporary spousal support before conducting a bifurcated trial on the enforceability of such a premarital agreement. The *Pendleton* court did not address the effect of section 1615(c) and the statutory language making a premarital agreement to be deemed not to have been voluntarily executed unless the court makes the requisite findings to overcome that presumption. The *Pendleton* court did not address the procedural order in which the court must hear a request for temporary spousal support and make findings under section 1615(c).

### C. Public Policy Supports a Presumption of Involuntary Execution

Public policy reinforces the statutory language and our conclusion the trial court had discretion to award temporary spousal support. The state has an interest in ensuring that one spouse does not become a burden to the state pending a judgment of dissolution. For that reason, the Legislature granted courts the authority under section 3600 to order spousal support necessary for the parties to a marital dissolution to maintain the living conditions and standards "in as close to the status quo position as possible pending trial and the division of their assets and obligations." (*Wittgrove, supra*, 120 Cal.App.4th at p. 1327.) The court here expressly stated the basis for the award was to maintain the status quo due to necessity.

Such a policy moving forward supports the goals of the Legislature and public policy supports granting trial courts the discretion to award temporary spousal support until the court makes findings under section 1615(c) or adjudicates the enforceability of a premarital agreement. A court should have the discretion to award temporary support if the party in need of support cannot maintain the marital standard of

11

living without the support pending the determination of whether a premarital agreement is enforceable. Prohibiting an award of temporary spousal support in that situation may have the consequence of exacerbating the financial disparities, which in turn could impair or impede the ability of the party challenging the premarital agreement to litigate the issue of its validity. As we shall explain, if the Premarital Agreement ultimately is found to be enforceable, the court can make orders to permit Peter to recoup support payments. Peter argues that allowing trial courts to order temporary spousal support without first adjudicating the validity of a spousal support waiver would produce a chilling effect on the use and benefits of a premarital agreement. We do not believe our decision would have that effect. Whether or not a court awards temporary support, an enforceable premarital waiver of support has the substantial benefit of barring permanent support and any temporary support after an adjudication that the waiver is valid. Further, a party, such as Peter, who wants immediate enforcement of a spousal support waiver can make a request for an order for a facial review of the premarital agreement and for findings under section 1615(c).

III. *Remedies Are Available to Peter in the Event the Premarital Agreement is Held to be Enforceable*

We invited the parties to submit supplemental briefs on the issue of whether the trial court can order reallocation or reimbursement of the amounts paid by Peter in the event the court ultimately determines the Premarital Agreement is enforceable. In response to our invitation, both Debra and Peter submitted supplemental briefs on that issue. After considering those briefs, we conclude the trial court may retroactively modify the temporary spousal support order and order reimbursement of amounts paid in temporary spousal support.

A.  The Trial Court Reserved Jurisdiction to Modify Spousal Support Retroactively

The basic rule is that a temporary spousal support order "may be modified or terminated at any time except as to an amount that accrued before the date of the filing of the notice of motion or order to show cause to modify or terminate." (§ 3603; see § 3651, subd. (c)(1) [same but noting an exception inapplicable here]; §3653, subd. (a) ["[a]n order modifying or terminating a support order may be made retroactive to the date of the filing of the notice of motion or order to show cause to modify or terminate, or to any subsequent date" subject to exceptions inapplicable here].) Several cases have carved out an exception to allow retroactive modification to the date of the support order if the trial court expressly reserved jurisdiction. (*In re Marriage of Spector* (2018) 24 Cal.App.5th 201, 208-210; *In re Marriage of Freitas* (2012) 209 Cal.App.4th 1059, 1073-1074; *In re Marriage of Gruen* (2011) 191 Cal.App.4th 627, 639.) "Distilled simply, *Gruen* and *Freitas* together establish the rule that a trial court lacks jurisdiction to retroactively modify a temporary support order to any date earlier than the date on which a proper pleading seeking modification of such order is filed [citation], unless the trial court expressly reserves jurisdiction to amend the support order such that the parties' clear expectation is the original support award is not final [citation]." (*In re Marriage of Spector*, at p. 210.)

Here, the trial court stated near the end of the hearing: "[T]o be clear, the order regarding spousal support . . . may be reallocated at the conclusion, obviously, of course, for example if the premarital agreement is found to be valid and there's a determination that there was no spousal support, obviously [Peter] will be given credits at the conclusion of the case." Peter contends this is not an express reservation of jurisdiction. We conclude it is. The court had just bifurcated the issue of enforceability of the Premarital Agreement and recognized that resolution of that issue might affect the validity of the award of spousal support. The court expressly and clearly announced its

13

intent to grant Peter credits if the Premarital Agreement was found to be enforceable. The parties' clear expectation, based on the court's statements and the circumstances of case, must have been that the issue of spousal support would not be finally decided until the bifurcated trial on the issue of the enforceability of the Premarital Agreement.

### B. We Resolve Any Doubts About Appellate Jurisdiction by Treating the Appeal as a Petition for Writ of Mandate

Peter argues that if the trial court did reserve its jurisdiction, then the order awarding temporary spousal support would not be final for purposes of the collateral order doctrine, and, as a consequence, we would lose jurisdiction over the appeal. Under the collateral order doctrine, "[w]hen a court renders an interlocutory order collateral to the main issue, dispositive of the rights of the parties in relation to the collateral matter, and directing payment of money or performance of an act, direct appeal may be taken." (*In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368.) Final orders awarding or denying temporary spousal support are directly appealable under the collateral order doctrine. (*Ibid.*; see Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2022) ¶ 16:269, p. 16-101.)

A reservation of jurisdiction usually will render a temporary support award to be nonfinal and, hence, not directly appealable. (See *In re Marriage of Freitas, supra*, 209 Cal.App.4th at pp. 1074-1075.) Although the trial court here reserved jurisdiction, we conclude the interests advanced by the collateral order doctrine are best served by deeming the order awarding temporary spousal support to be appealable. "The interest that is served by the collateral order doctrine is the expeditious completion of appellate review, when that can be accomplished without implicating the merits of the underlying controversy. The collateral order doctrine also preserves appellate review when, without the invocation of this doctrine, appellate review would be foreclosed." (*Muller v. Fresno Community Hospital & Medical Center* (2009) 172 Cal.App.4th 887, 904.)

14

In any event, we resolve any doubts about our appellate jurisdiction by exercising our discretion to treat Peter's appeal as a petition for writ of mandate. (*Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 744-746; *Olson v. Cory* (1983) 35 Cal.3d 390, 400-401.)  The appellate record contains all the elements or their functional equivalents required for a writ of mandate proceeding, the matter is fully briefed, argued, and submitted, there is no indication the trial court would appear as a party in a writ proceeding, and judicial economy would not be served by deferring resolution of the issues presented until rendition of an appealable judgment or order. (*Olson,* at pp. 400-401.)

### C.  The Trial Court Can Order Reimbursement of Temporary Spousal Support if the Premarital Agreement is Enforceable

Peter argues that in the event the Premarital Agreement is determined to be enforceable, it would be difficult, if not impossible, for him to recover from Debra the amounts he paid her in temporary spousal support.  We conclude Peter has adequate means to obtain reimbursement.  If the trial court determines the Premarital Agreement is enforceable, the court can order Debra to account for the support payments she received (*Palmquist v. Palmquist* (1963) 212 Cal.App.2d 322, 337), order reimbursement to Peter, and enforce that order by means of section 290.

Section 290 states:  "A judgment or order made or entered pursuant to this code may be enforced by the court by execution, the appointment of a receiver, or contempt, *or by any other order* as the court in its discretion determines from time to time to be necessary."  (Italics added.)  "Thus, the Family Code generally confers on the trial court broad discretion to select appropriate enforcement remedies and terms; and, in exercising that discretion, to take the equities of the situation into account."  (Hogoboom

15

& King, *supra*, California Practice Guide:  Family Law, ¶ 18:1.5 at p. 18-1.)[5]  The court's enforcement remedies include, for example, issuance of a writ of execution (*In re Marriage of Farner* (1989) 216 Cal.App.3d 1370, 1374-1376) and ordering the sale of Debra's share of community property (see *Bonner v. Superior Court* (1976) 63 Cal.App.3d 156, 166-167 [court has power to order sale of property awarded to wife to effectuate judgment requiring she make an equalizing payment]).

IV.  *Procedure to Enforce Spousal Support Waiver in Premarital Agreements*

In his supplemental brief, Peter suggests a procedure for ruling on a request for temporary spousal support in the face of a support waiver in a premarital agreement. He proposes that the trial court first conduct a facial review of the premarital agreement to determine whether the agreement on its face complies with section 1615(c).

We agree that would be a sensible approach and, in this case, might have averted this appeal and, potentially, the need to recoup support payments made to Debra. We stress, however, that a premarital agreement is presumed not to have been executed voluntarily.  It is therefore incumbent upon the party seeking to enforce a premarital agreement to initiate this first step by bringing a request for order for the trial court to undertake such a facial review and make findings under section 1615(c).

---

[5]  Peter argues that reimbursing him out of Debra's share of the community assets might violate the statutory requirement that community assets be divided equally unless the parties agree otherwise.  (§ 2550; see *In re Marriage of Cream* (1993) 13 Cal.App.4th 81, 88.)  We leave to the trial court the determination of the appropriate means of applying section 290 to reimburse Peter if that becomes necessary.  We note, however, the requirement of equal division of community assets does not necessarily mean that one spouse's equal share of those assets cannot be subject to a charge.  (*In re Marriage of Feldner* (1995) 40 Cal.App.4th 617, 625 [reimbursement of spouse who used separate property to pay community debt].)

DISPOSITION

The petition for writ of mandate is denied.  Debra shall recover costs on appeal.


SANCHEZ, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


DELANEY, J.

17